| | |
|---|---|
| MAGALY FELICIANO-MATEO, | |
| Plaintiff, | |
| v. | COMPLAINT |
| DI GROUP, LLC D/B/A CAROLINA DUKE INN, and MEHUL PATEL | |
| Defendants. | |

## **PRELIMINARY STATEMENT**

1.  This is an action by a former employee against DI
    Group, LLC d/b/a Carolina Duke Inn ("the motel"),
    together with its owner and Manager, Mehul Patel,
    ("Defendants") to recover unpaid wages under the
    Fair Labor Standards Act (FLSA). 29 U.S.C. §§ 201,
    *et seq.*

2.  Defendants are jointly and severally liable for
    their violations of the FLSA.

3.  Defendants employed Plaintiff within the meaning
    of the FLSA while failing to pay her the minimum

1

wage during her almost two years of working at the motel.

4. Defendants also failed to pay Plaintiff overtime pay for several pay periods over approximately five (5) months.

5. Defendants took unauthorized deductions from Plaintiff's pay that resulted in Plaintiff receiving less than the minimum wage "free and clear" in violation of the FLSA.

6. Defendants further violated the FLSA by engaging Plaintiff to wait and allowing or requiring her to work without compensating her.

7. Defendants' violations of the FLSA were willful because Defendants were aware of the requirement to pay Plaintiff the minimum wage and overtime yet took actions they knew would have the effect of bringing Plaintiff's pay below the minimum wage or showed reckless disregard for whether they complied with the FLSA.

2

## JURISDICTION AND VENUE

8.  This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337, and 29 U.S.C. § 216(b). This Court has the power to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9.  Venue is proper pursuant to 28 U.S.C. 1391(b) because a substantial part of the pleaded violations occurred at or near the Carolina Duke Inn in Durham, North Carolina.

## NATURE OF THIS ACTION

10. Plaintiff brings this action under the Fair Labor Standards Act. 29 U.S.C. §§ 201 *et seq.* and the Declaratory Judgment Act. 28 U.S.C. §§ 2201 and 2202.

11. Plaintiff seeks declaratory relief, back wages, liquidated damages, costs, and attorney's fees.

12. Plaintiff demands a jury trial on all issues so triable.

## **PARTIES**

13. Plaintiff is a former employee of Defendants who worked at their budget motel, the Carolina Duke Inn, in Durham, North Carolina.

14. Plaintiff worked for Defendants from approximately October 2018 through May 2020.

15. Plaintiff was at all times relevant to this complaint an "employee" of Defendants, individually and collectively, within the meaning of the Fair Labor Standards Act in that she was employed by Defendants and is an individual that Defendants suffered or permitted to work. *See* 29 U.S.C. §§ 203(e)(1);(g).

16. Defendant DI Group, LLC is a North Carolina limited liability company that owns and operates the motel.

17. Defendant Mehul Patel is the owner and manager of Defendant DI Group, LLC.

18. Defendant Patel is a "manager" within the meaning of N.C. Gen. Stat. § 57D-3-20.

19. Upon information and belief, Defendant Patel owns, operates, or helps manage multiple hotels in other states including Virginia and South Carolina.

20. Defendants, individually and collectively, were at all times relevant to this complaint "employers" within the meaning of the FLSA. 29 U.S.C. § 203(d).

21. Defendants were at all times relevant to this complaint an "enterprise engaged in commerce" within the meaning of the FLSA. 29 U.S.C. § 203(s)(1)(A).

## **STATEMENT OF FACTS**

### A. *Plaintiff's Employment at the Motel*

22. Plaintiff began working at the motel as a housekeeper around October 2018.

23. As a housekeeper, her duties included cleaning the rooms, changing the sheets, and placing new towels in rooms, among other activities.

24. Upon information and belief, Plaintiff and Defendants never signed an employment agreement.

5

25. When Plaintiff began working at the motel, she worked seven (7) days a week.

26. About five months into Plaintiff's employment with Defendants, in roughly February of 2019, she began working six (6) days a week instead of seven (7).

27. Her work schedule varied each day, but generally she worked from about 11:00 a.m. to 5:00 p.m.

28. Near the beginning of each workday, the housekeeping manager, as Defendants' agent, distributed a paper to Plaintiff listing the rooms she was required to clean that day ("room list").

29. The room list gave the room numbers of each room Defendants assigned to Plaintiff and stated whether the guest in each room was checking out or staying another night, and it included a space for the manager to check off each room once Plaintiff cleaned it.

30. Defendants' compensation of Plaintiff's work was based on the number of rooms she cleaned and the

6

type of cleaning each room required (checkout or stayover).

31. Upon information and belief, Defendants divided the total number of rooms needing to be cleaned each day by the number of available housekeepers so that each housekeeper was assigned a roughly equal number of rooms.

32. Defendants assigned Plaintiff a "line" of rooms from which her daily assignments were taken.

33. Plaintiff's assigned rooms were rooms 202-252, and Defendants assigned Plaintiff her daily allotment of rooms to be cleaned from this line.

34. The line consisted of twenty-six (26) even-numbered rooms. (202, 204, 206 etc.)

35. Plaintiff began her workday by removing the dirty laundry from each room, cleaning the room and bathroom, and restocking each room with soap, shampoo, etc. ("preliminary tasks").

36. Among the last steps in Plaintiff's workday were making the bed or beds with clean sheets and

7

bedding and restocking the towels and washcloths in the bathrooms.

37. In order to complete her rooms and finish her workday, Plaintiff relied on Defendants to supply her with the fresh linens that she needed to then replace the dirty ones in each of her assigned rooms.

38. The laundry for the motel was done primarily by the housekeeping manager.

39. Plaintiff had to wait for Defendants' housekeeping manager to make the needed clean linens available before she could replace dirty ones, and the order in which clean linens were distributed between Plaintiff and her coworkers was undefined, so that Plaintiff could not anticipate when clean linens would be available.

40. Plaintiff was expected to begin cleaning rooms again as soon as clean laundry was available.

41. Defendants permitted Plaintiff to wash sheets and towels herself, using the hotel's laundry

facilities for laundry staff, to avoid having to wait until later in the day to receive clean linens from the manager, but Defendants did not pay Plaintiff for this time spent doing laundry.

42. Plaintiff washed the towels and sheets needed to complete her work herself roughly three times each week, and each time resulted in an hour or hour-and-a-half of Plaintiff working without pay.

43. Because Defendants paid Plaintiff by the number of rooms cleaned, it cost them nothing to make her wait for clean linens or to have her launder the linens used for her rooms.

44. Defendants' justification for making Plaintiff wait was that she lived at the motel and therefore could wait more easily than other employees.

45. Defendants decision to operate as such had the effect of motel employees that did not live on site consistently being able to finish their workday earlier while Defendants refused to pay Plaintiff

9

for the time they engaged her to wait every workday.

46. This arrangement primarily benefited Defendants because Plaintiff was available at a moment's notice. Defendants did not have to wait for her to travel from her home to the motel and could thus get the rooms cleaned faster while still not paying Plaintiff (or any other employee) as she waited for Defendants to supply her with needed clean linens.

47. Defendants sometimes called Plaintiff after she cleaned all of her rooms for the day and required her to take additional towels or toiletries to guests. She was expected to be available for these calls.

48. Defendants did not compensate Plaintiff for the trips to take additional supplies to motel guests.

49. By always selecting Plaintiff as the one to wait and providing her the needed linens last, Defendants engaged her, rather than one of her

10

coworkers, to wait, and Plaintiff's waiting time was primarily for the benefit of Defendants.

### B. Plaintiff's Residence at the Motel

50. During the time Plaintiff worked for Defendants, Plaintiff lived in a motel room provided by Defendants.

51. Upon information and belief, Defendants and Plaintiff never memorialized any lodging agreement in writing.

52. Initially Plaintiff lived in a "double" room with two beds.

53. Around the time she switched from working seven (7) days a week to six (6), she switched from the double room to a "single" room with only one bed.

54. While Plaintiff stayed in the double room, Defendants told Plaintiff the monthly cost of the room was $800.00 or roughly $400.00 each paycheck.

55. Plaintiff moved to a single room because Defendants told her it would cut her monthly deduction in half to $400.00 or roughly $200.00 each paycheck.

11

56. Upon information and belief, Defendants did not maintain or upkeep the room Plaintiff lived in similarly to how they upkept the rooms of motel guests. The condition of the room was generally poor and in need of maintenance.

57. Upon information and belief, the actual cost to the Defendants of both the double and single rooms was substantially less than $800 per month and $400 per month respectively, and the charge to the Plaintiff resulted in a profit to Defendants.

*C. Plaintiff's Compensation for her Work and Defendants' Deductions for Lodging*

58. Defendants' compensation of Plaintiff's work was based on the number of rooms she cleaned and the type of cleaning each room required.

59. Defendants paid Plaintiff $3.00 for each room she cleaned where the guest was staying another night, what the motel called a "stay over."

60. For rooms where the guest checked out that day, what the motel called a "check out," Defendants paid Plaintiff $3.50 per room.

61. Defendants did not compensate Plaintiff when they required her to wait for needed supplies such as clean sheets or towels.

62. For "on-call" tasks, such as taking motel guests additional towels or toiletries, Defendants did not compensate Plaintiff.

63. Defendant paid Plaintiff once every approximately two weeks, typically on Tuesday, and usually provided a check with a paystub.

64. Each payday when Defendants provided her the check, Defendant Patel or his agents would give Plaintiff cash in the amount stated on the paycheck minus whatever Defendants charged her for lodging.

65. Defendants instructed Plaintiff not to cash her check anywhere else besides with Defendants.

66. By requiring Plaintiff to cash her paycheck with Defendants, they ensured that they received the

13

$200.00 or $400.00 for the lodging directly from Plaintiff's wages before she left the room.

67. Upon information and belief, Defendants rarely if ever gave Plaintiff the actual check but instead required her to "cash" it with them.

68. Sometimes Defendants were a day late providing Plaintiff her pay and paystub.

69. The check stubs that Defendant provided to Plaintiff did not include a record for how many hours she worked that pay period.

70. The stubs only stated how many checkouts and stayovers she completed in the pay period and the amount each type of service was worth, $3.00 for stayovers and $3.50 for checkouts.

71. The amount of the check, before any deduction took place, was often for an amount less than the minimum wage of $7.25/hour.

72. For example, in the two-week pay period from December 16, 2019 through December 29, 2019 Plaintiff cleaned ninety (90) rooms. Of the ninety

14

(90), seventy (70) were check outs and twenty (20) were stay overs. In the same two weeks, Plaintiff worked approximately seventy-two (72) hours.

73. If Defendants paid the minimum wage, it would result in them paying Plaintiff approximately $522.00 for this pay period, prior to any deductions ($7.25 X 72 = $522.00).

74. Defendants gross pay to Plaintiff for this pay period was for $305.00, which is $217.00 less than the minimum wage amount. After taxes and other payroll withholdings required by law, Plaintiff's check was for $281.67.

75. In this same pay period, Defendants deducted $200.00 from Plaintiff leaving her only $81.67—an effective after-tax wage rate of roughly $1.13/hr.

76. Plaintiff did not receive her wages free and clear because Defendants deducted the lodging charge prior to paying Plaintiff.

77. Defendants deducted similar amounts for lodging each pay period, regardless of the number of pay periods in the month.

78. During the early months of Plaintiff's employment with Defendants, while Plaintiff lived in the double room, Defendants deducted about $400.00 per check or $800.00 per month.

79. Once Plaintiff transitioned to a single room, Defendants cut their deduction in half to about $200.00 per pay period or $400.00 per month.

80. After Defendants took the deduction, Plaintiff was left with very little money to live on.

81. Plaintiff often stretched between $50.00 or $100.00 over a two-week period.

82. Plaintiff received in cash less than the minimum wage for every workweek or nearly every workweek while working for Defendants.

83. Defendants' unlawful deductions from Plaintiff made moving to a new residence to escape the deductions, in effect, impossible for Plaintiff.

16

84. By failing to pay Plaintiff $7.25 per hour free and clear for all the hours worked in a workweek, Defendants violated Plaintiff's right to receive a minimum wage for her work.

### D. *Management of the Motel*

85. Defendants employed two individuals to co-manage the motel. They were known to Plaintiff only as "Falu" and "Mr. B."

86. Falu was the manager who oversaw the front desk and housekeepers, including Plaintiff. She was in charge of doing laundry.

87. Upon information and belief, Mr. B was the "business manager" of the motel.

88. Upon information and belief, Both Falu and Mr. B were under the direction and supervision of Defendants.

89. Defendant Patel employed Plaintiff within the meaning of the FLSA because he acted "directly or indirectly in the interest of" DI Group, LLC in relation to Plaintiff.

17

90. Defendant Patel was the person who hired Plaintiff initially.

91. Defendant Patel signed Plaintiff's Paychecks.

92. Defendant Patel was often the person who "cashed" Plaintiff's paychecks and took the deduction which resulted in a profit to him.

93. Defendant Patel met regularly with Mr. B to discuss the business operations of the motel.

94. When Plaintiff's employment for Defendants concluded, Defendant Patel offered Plaintiff employment in another motel he owns or manages in Virginia.

## PLAINTIFF'S FIRST CLAIM: DEFENDANTS FAILED TO PAY THE MINIMUM WAGE IN VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201 *et seq.*, BY PAYING PLAINTIFF BY THE ROOM RATHER THAN THE HOUR.

95. Plaintiff incorporates paragraphs 1–94 by reference and includes them herein.

96. Defendant DI Group, LLC and Defendant Patel are each "employers" within the meaning of 29 U.S.C. § 203(d).

97. Defendant Patel and Defendant DI Group, LLC are employers within the meaning of the FLSA.

98. Defendants failed to pay Plaintiff the minimum wage of $7.25 per hour for all hours worked in every workweek or nearly every workweek while they employed Plaintiff in violation of the FLSA.

99. The FLSA requires employers to pay non-exempt employees $7.25 per hour for all hours worked in a workweek. 29 U.S.C. § 206(a)(1)(c).

100. Plaintiff worked approximately six (6) hours each workday, and each workweek consisted of approximately six (6) workdays.

101. A typical workweek for Plaintiff consisted of approximately thirty-six (36) compensable hours.

102. A thirty-six (36) hour workweek at the minimum wage of $7.25 per hour is $261.00 per week.

103. Because Defendants paid Plaintiff every two weeks, a typical paycheck should have been approximately $522.00 ($261.00 X 2).

104. Defendants' payment to Plaintiff was less than the minimum wage.

105. By failing to pay Plaintiff $7.25 per for all the hours worked in a workweek, Defendants violated Plaintiff's right to receive the minimum wage for her work.

106. Defendants' violations of the FLSA were willful because Defendants were aware of the requirement to pay Plaintiff the minimum wage and took actions they knew would have the effect of bringing Plaintiff's pay below the minimum wage or showed reckless disregard for whether they complied with the FLSA.

107. Defendants are jointly and severally liable for these violations.

108. Plaintiff is entitled to actual and liquidated damages for up to three years' worth of violations.

**PLAINTIFF'S SECOND CLAIM: DEFENDANTS BROUGHT PLAINTIFF'S PAY BELOW THE MINIMUM WAGE IN VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201 et seq., BY TAKING UNLAWFUL LODGING DEDUCTIONS**

109. Paragraphs 1 through 108 are realleged and incorporated herein by reference.

110. Defendant DI Group, LLC and Defendant Patel are each "employers" within the meaning of 29 U.S.C. § 203(d).

111. Defendant Patel and Defendant DI Group, LLC are employers within the meaning of the FLSA.

112. The FLSA requires employers to pay non-exempt employees $7.25 per hour for all hours worked in a workweek. 29 U.S.C. § 206(a)(1)(c).

113. The wages paid to an employee must be "free and clear." 29 C.F.R. § 531.35

114. Plaintiff worked approximately six (6) hours each workday, and each workweek consisted of approximately six (6) workdays.

115. A typical workweek for Plaintiff consisted of approximately thirty-six (36) compensable hours.

116. A thirty-six (36) hour workweek at the minimum wage of $7.25 per hour is $261.00 per week.

117. Because Defendants paid Plaintiff every two weeks, a typical paycheck should have been approximately $522.00 ($261.00 X 2).

118. Defendants' unlawful deduction of Plaintiff's pay brought her "free and clear" payment below the minimum wage in every workweek or nearly every workweek while they employed Plaintiff in violation of the FLSA.

119. By failing to pay Plaintiff $7.25 per hour free and clear for all the hours worked in a workweek, Defendants violated Plaintiff's right to receive the minimum wage for her work.

120. Defendants' violations of the FLSA were willful because Defendants were aware of the requirement to pay Plaintiff the minimum wage and took actions they knew would have the effect of bringing Plaintiff's pay below the minimum wage or showed

reckless disregard for whether they complied with the FLSA.

121. Defendants are jointly and severally liable for these violations.

122. Plaintiff is entitled to actual and liquidated damages for up to three years' worth of violations.

**PLAINTIFF'S THIRD CLAIM: DEFENDANTS FAILED TO PAY OVERTIME FOR PAY PERIODS IN WHICH PLAINTIFF WORKED IN EXCESS OF FORTY (40) HOURS IN VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201 *ET SEQ.***

123. Paragraphs 1 through 122 are realleged and incorporated herein by reference.

124. Defendant DI Group, LLC and Defendant Patel are each "employers" within the meaning of 29 U.S.C. § 203(d).

125. Defendant Patel and Defendant DI Group, LLC are employers within the meaning of the FLSA.

126. Employers are required to pay non-exempt employees time-and-a-half (150%) their "regular rate" for each hour in excess of forty (40) in any given workweek. 29 U.S.C. § 207(a)(2)(c).

23

127. The "regular rate" is not allowed to be lower than the minimum wage of $7.25/hr.

128. In weeks where an employee works more than forty (40) hours, the employer must compensate that employee at a rate not less than $10.875/hr for each hour past the fortieth hour to be in compliance with both the minimum wage and overtime provisions of the FLSA.

129. During the first five (5) months of her employment, Plaintiff worked approximately six (6) hours each workday, and each workweek consisted of approximately seven (7) workdays.

130. A typical workweek for Plaintiff during this time period consisted of approximately forty-two (42) compensable hours.

131. A forty-two (42) hour workweek at the minimum wage of $7.25 per hour is $311.75 per week. ($7.25/hr. X 40 hours) + ($10.875/hr. X 2 hours)

24

132. Because pay periods were two weeks, Plaintiff's checks during these first five (5) months should have been roughly $623.50.

133. Defendants failed to pay Plaintiff the overtime rate for all or nearly all of the pay periods in which she worked more than forty (40) hours.

134. Defendants' violations of the FLSA were willful because Defendants were aware of the requirement to pay Plaintiff the overtime rate for these hours and took actions they knew would have the effect of bringing Plaintiff's actual rate below the overtime rate or showed reckless disregard for whether they complied with the FLSA.

135. Defendants are jointly and severally liable for these violations.

136. Plaintiff is entitled to actual and liquidated damages for up to three years' worth of violations.

## **PLAINTIFF'S FOURTH CLAIM: DECLARATORY RELIEF 28 U.S.C. §§ 2201 and 2201.**

137. Paragraphs 1 through 136 are realleged and incorporated herein by reference.

138. The parties are in dispute as to their respective rights, privileges, obligations, and liabilities under the FLSA, and require declaratory relief as to what those respective rights, privileges, obligations, and liabilities are.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

(a) Grant a jury trial on all issues so triable;

(b) Declare Defendants have violated the rights of the named Plaintiff under the FLSA;

(c) Find that the actions of the Defendants were willful within the meaning of the FLSA;

(d) Enter Judgment in favor of Plaintiff for actual and liquidated damages for every workweek for which Defendants failed to pay the minimum wage within three years of the filing of Plaintiff's complaint, plus pre-

26

and post-judgment interest at the full amount allowed by law under the First Claim for Relief.

(e) Enter Judgment in favor of Plaintiff for actual and liquidated damages for every workweek for which Plaintiff worked in excess of forty (40) hours where Defendants failed to pay the overtime rate within three years of the filing of Plaintiff's complaint, plus pre- and post-judgment interest at the full amount allowed by law under the First Claim for Relief.

(f) Award Plaintiff costs and attorney's fees in an amount to be decided at a later date in accordance with 29 U.S.C. § 216(b).

(g) Award such other relief as may be just and proper in this action.

This the 16th day of March, 2021

Respectfully submitted,

/s/Benjamin Williams
NC Bar No. 53665
Legal Aid of NC
224 S. Dawson St.
Raleigh, NC 27601
Phone: (919) 856-2180
BenjaminW@legalaidnc.org

Attorney for Plaintiff

28